## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## MONROE DIVISION

**WEYERHAEUSER CO., ET AL.**　　　　　　**CASE NO.  3:21-CV-00905**

**VERSUS**　　　　　　　　　　　　　　　**JUDGE TERRY A. DOUGHTY**

**SIMSBORO COATING**　　　　　　　　**MAG. JUDGE KAYLA D. MCCLUSKY**
**SERVICES LLC, ET AL.**

### REPORT AND RECOMMENDATION

Before the undersigned are two motions to dismiss for failure to state a claim, filed by

Defendant Burlington Insurance Company ("Burlington") [doc. #25] and Defendant Evanston

Insurance Company ("Evanston").  [doc. #29].  Plaintiffs Weyerhaeuser Company

("Weyerhaeuser") and Weyerhaeuser NR Company ("NR") oppose both motions.  For the

reasons assigned below, it is recommended that both Burlington's and Evanston's motions be

**GRANTED,** and Weyerhaeuser's and NR's claims against them be **DISMISSED WITH**

**PREJUDICE**.

### I.　　　BACKGROUND

Weyerhaeuser "is one of the world's largest private owners of timberlands, [and] . . . one

of the world's largest manufacturers of wood products."  [doc. #1-6, p. 183].  One of

Weyerhaeuser's products is wooden floor joists, known by the name Trus Joist® TJIs®.  [doc.

#1, p. 3].  The joists are coated with Flak Jacket®,[1] a proprietary fire-retardant coating.

---

[1] In their Complaint, Plaintiffs spell FlakJacket as one word; however, all other sources,
including Weyerhaeuser's own website, refer to the product as "Flak Jacket."  Accordingly, the
undersigned has used that spelling.  *See* https://investor.weyerhaeuser.com/2017-07-18-
Weyerhaeuser-issues-statement-regarding-TJI-R-Joists-with-Flak-Jacket-R-Protection, last
visited 02/28/2022.

In March 2015, NR, Weyerhaeuser's wholly owned subsidiary, entered into an agreement (the "Manufacturing Agreement") with Simsboro Coating Services, LLC ("Simsboro"). Simsboro would take over the application of the Flak Jacket to the joists, using a previously closed Weyerhaeuser facility located in Simsboro, Louisiana.  As well as spelling out the other terms of their agreement, the Manufacturing Agreement required Simsboro to obtain commercial general liability ("CGL") insurance, covering bodily injury liability and contractual liability of at least $5,000,000 for each occurrence and the same in the aggregate, under which '"Weyerhaeuser and its Subsidiaries'" would be named as additional insureds.  [doc. #35-1, p. 3].  Simsboro was also required to "indemnify, defend, and hold harmless Weyerhaeuser, and its parent company . . . against all claims, damages . . . arising out of (a) [Simsboro's] . . . negligence, other tortious fault, or intentional misconduct . . . . provided, that no right to indemnify will exist in that portion of a Claim resulting from the negligence, tortious fault, or intentional misconduct of Weyerhaeuser, its officers, employees, contractors, and agents."  [doc. #35-1, p. 4].

Simsboro obtained CGL insurance from Burlington in the amount of $1,000,000 per occurrence and $2,000,000 in the aggregate.  Two policies are at issue in this case:  (1) Policy #245BW35682 with effective dates of May 18, 2016, through May 18, 2017 [doc. #1-2], and (2) Policy #245BW39882 with effective dates of May 18, 2017, through May 18, 2018 [doc. #1-3] (the "Policies").  [doc. #1, p. 5].  The Policies required Burlington to defend and indemnify the named additional insured against claims of bodily injury caused in whole or in part by Simsboro's acts or omissions or the acts or omissions of those acting on Simsboro's behalf. [doc. #s 1-2, p. 32; 1-3, p. 35].  The Policies only named NR, not Weyerhaeuser (or any other Weyerhaeuser entity), as an additional insured.  *Id.*

2

The Policies also required Burlington to defend and indemnify Simsboro against claims for which Simsboro became liable because of an "insured contract." [doc. #s 1-2, p. 17; 1-3, p. 18]. An insured contract is defined in the insurance policy as "part of any other contract or agreement pertaining to [Simsboro's] business . . . under which Simsboro assume[s] the tort liability of another party to pay for 'bodily injury' to a third person . . . provided the 'bodily injury' . . . is caused, in whole or in part, by [Simsboro] or those acting on [Simsboro's] behalf." [doc. #s 1-2 p. 32; 1-3, p. 29].

For the remainder of the required insurance, Simsboro obtained an excess insurance policy from Evanston (the "Excess Policy"). [doc. #1, ¶¶ 18-21; doc. #1-4]. The Excess Policy incorporated all terms, conditions, agreements, exclusions, and definitions in the Policies. [doc. #29-1, p. 5; doc. #1-4, p. 10 (MAUB 0001 01 15)]. The Excess Policy provides coverage to "any other person or organization qualifying as an Insured under the 'underlying insurance'" and required Evanston to

> Pay those sums in excess of the limits shown in the Schedule of Underlying Insurance that you become legally obligated to pay as damages because of injury to which the insurance applies, provided that the "underlying insurance" also applies, or would apply but for the exhaustion of its applicable Limits of Insurance.

[doc. #1, ¶ 19; doc. #1-4, p.10 (MAUB 0001 01 15)].

Between October 2017 and July 2018, three lawsuits were filed in connection with Flak Jacket (collectively, " the underlying lawsuits"): *Ethan Boudreaux, et al. v. Weyerhaeuser Company*, Case No. 17-2-2652706, King County Superior Court, State of Washington ("*Boudreaux* I"); *Ethan Boudreaux, et al. v. Weyerhaeuser Company & Simsboro Coating Services, L.L.C.*, Case No. 670759, 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana ("*Boudreaux* II"); and *Tyler Hernandez, et al. v. Weyerhaeuser Company &*

*Simsboro Coating Services, L.LC* ., Cause No. 669966, 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana. [docs. #1-5; 1-6; 1-7]. The underlying lawsuits were brought on behalf of former Simsboro employees who alleged that the Flak Jacket coating exposed them to unsafe levels of formaldehyde.[2] *Id.* All three lawsuits listed Weyerhaeuser as a defendant, and two of the lawsuits also listed Simsboro as a defendant. *Id.* Weyerhaeuser and NR claim that the underlying lawsuits improperly listed Weyerhaeuser as a defendant and that the proper defendant was NR. [doc. #1, p. 7]. According to Weyerhaeuser and NR, "[a]t all relevant times it was clear to all parties that [NR] was the proper party." *Id.* Weyerhaeuser and NR also claim that "Weyerhaeuser expressly noted the naming error in subsequent pleadings in each of these cases" and demanded defense and indemnification on behalf of both Weyerhaeuser and NR in connection with the underlying lawsuits. *Id.*

In September 2020, the parties to the lawsuits mediated and reached a settlement. Despite the demands, neither Burlington nor Evanston defended Weyerhaeuser or indemnified it for the costs of settlements for the underlying lawsuits. *Id.* at 9.

On April 6, 2021, Weyerhaeuser and NR filed suit in this Court against Simsboro, Burlington, and Evanston. [doc. #1]. Relevant to the instant motions, Weyerhaeuser and NR filed suit against Burlington and Evanston for breach of contract and violation of La. R.S. § 1892, Louisiana's prompt payment statute. *Id.* Specifically, Weyerhaeuser and NR claimed that Burlington and Evanston breached the parties' insurance contracts when they failed to defend and indemnify Weyerhaeuser in the underlying suits. *Id.* Weyerhaeuser and NR argue that this failure was a breach of contract because Burlington and Evanston owed Weyerhaeuser coverage as an additional insured and as a third-party beneficiary. [doc. #1, p. 10].

---

[2] In *Boudreaux* II, the spouses of the former employees also asserted claims. [doc. #1-6].

In its motion to dismiss, Burlington makes five arguments.  First, Burlington insists that it did not owe defense or indemnity coverage to Weyerhaeuser because Weyerhaeuser was not listed as an additional named insured under the Policies.  [doc. #25, p. 8].  Second, as to *Boudreaux* I, Burlington argues that it had no duty to defend or indemnify Weyerhaeuser or NR because that duty arose from claims against Simsboro, as provided in the Additional Insured Endorsement in the Policies, and Simsboro was not a defendant in *Boudreaux* I.  Third, Burlington argues that Plaintiffs have no cause of action for breach of contract under the Manufacturing Agreement.  Fourth, Burlington argues that, even if there were otherwise coverage, the Total Pollution Exclusion in the Policies applies to the claims in the three lawsuits and precludes coverage.  Finally, if, as Burlington contends, there was no coverage, Burlington could not have violated Louisiana's prompt payment statute.  *Id.*

In its motion to dismiss, Evanston incorporates the arguments made by Burlington and claims that, because Burlington did not owe underlying coverage to Weyerhaeuser, Evanston could not owe coverage as an excess insurer.  [doc. #29].  Evanston's motion to dismiss adopted Burlington's arguments that Plaintiffs have no claim as an additional insured or third-party beneficiary and that the allegations in the underlying lawsuits are barred by the pollution exclusion.  In addition to the adopted arguments, Evanston argues that it is entitled to dismissal of the claims against it because (1) Weyerhaeuser failed to adequately plead potential exhaustion of the Burlington primary insurance policies and (2)  Evanston did not have the opportunity participate in the settlement discussions and, thus, its consent to settle provision bars coverage.  [doc. #29, p. 7-10].

In their opposition brief, which addresses both motions, Weyerhaeuser and NR respond.  First, they admit that Weyerhaeuser was not named as an additional insured under the Policies,

but contend that they can still prevail on this claim because of the language of the Policies, the allegations in the Complaint, and applicable Louisiana law. More specifically, Weyerhaeuser alleges that Burlington knew that NR, the entity which **was** an additional insured under the Policies, "was the proper party [to the underlying lawsuits]." [docs. #35, p. 9-10; #1, p. 7]. They argue that the duty to defend encompasses the mere possibility of liability and that Burlington's interpretation of the law would result in a narrower duty to defend than to indemnify, contrary to Louisiana law. In addition to responding directly to Burlington's argument, Plaintiffs argue for the first time in their opposition, that, if Weyerhaeuser is not afforded coverage because Weyerhaeuser was not listed as an additional insured, coverage should be extended to it (as well as NR) due to mutual mistake and/or because the insurers waived this defense "by failing to raise the issue until this suit was filed." [doc. #35, p. 15].

Weyerhaeuser also responds to Burlington's other arguments. As to the second argument, Weyerhaeuser argues that it was entitled to coverage in *Boudreaux* I because the claims involved Simsboro's negligence. As to the third argument, Weyerhaeuser clarifies that it does not assert a breach of contract claim under the Direct Action statute, but explains that its third-party beneficiary argument stems from "(1) the defense and indemnify provision in the manufacturing agreement between Weyerhaeuser and Simsboro and (2) the insured contract provision in the Burlington policies under which Burlington agreed to provide coverage for any agreement by Simsboro to assume the tort liability of another party." [doc. #35, p. 18]. Essentially, Weyerhaeuser claims that it is not a stranger to the contract, but that the indemnification provision in the Manufacturing Agreement and the insured contract provision in the Policies require Burlington to provide coverage. As to the fourth argument, Plaintiffs respond that the Total Pollution Exclusion does not exclude coverage for the types of claims alleged in

the underlying lawsuits.  Finally, as to the fifth argument, Plaintiffs argue that they can prevail

on the other claims, and, thus, they may also prevail on the Louisiana prompt payment claim

against Burlington.

In its reply brief, Burlington again contends that it did not owe Weyerhaeuser a duty to

defend as an additional insured.  [doc. #36].  It also reiterates its argument that, even if it had

known that NR was the proper defendant in the underlying suits, it was not required to extend

coverage to Weyerhaeuser because Weyerhaeuser is a stranger to the Policies.  It also addresses

Weyerhaeuser and NR's contractual indemnitee argument, claiming that, *inter alia*, under the

insured contract provision, "the right of recovery under the [insured contract] lies with the

purported indemnitor (Simsboro), not the purported indemnitees ([Weyerhaeuser and NR])."

[doc. #36, p. 7].  Finally, Burlington rejects Weyerhaeuser and NR's newly raised waiver

argument on the ground that it is inapplicable when an insurer has denied defense altogether and

their newly raised reformation argument on the bases that Weyerhaeuser and NR did not assert

this claim in their Complaint and that, at any rate, the claim fails substantively.  *Id.* at pp. 1-2, 4,

& 4, n.15.

In its reply brief, Evanston makes many of the same arguments, and urges that, if

Burlington prevails, so must it.  [doc. #37, p. 8].

## II.    LEGAL STANDARD

The Federal Rules of Civil Procedure allow dismissal of a claim for "failure to state a

claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  To state a claim, the pleading

must contain a "short and plain statement . . . showing that the pleader is entitled to relief . . ."

FED. R. CIV. P. 8(a)(2).  While the pleading need not assert detailed factual allegations, it must

"state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555 (2007). A claim is plausible on its face "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 663 (2009).

In deciding a motion to dismiss, the Court must accept as true all of a plaintiff's allegations, unless the allegation is a "threadbare recital[] of a cause of action's elements, supported by mere conclusory statements." *Id.* Although legal conclusions may be asserted, "they must be supported by factual allegations" to gain the assumption of truth. *Id.* at 664. A well-pleaded complaint may proceed even if it strikes the Court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly*, 550 U.S. at 556. Nevertheless, the Court may dismiss a complaint "if it clearly lacks merit – for example, where there is an absence of law to support a claim of the sort made." *Thurman v. Med. Transp. Mgmt., Inc.*, 982 F.3d 953, 956 (5th Cir. 2020) (citations and internal quotation omitted).

In ruling on a motion to dismiss, courts are not generally permitted to review materials outside of the pleadings when deciding whether a plaintiff has stated a claim for relief. The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Additionally, " '[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.' " *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir. 1993)). Further, it is well-established and "'clearly proper in deciding a 12(b)(6) motion [that a court may] take judicial notice of matters of public record.' " *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Norris v. Hearst Trust,* 500 F.3d 454, 461 n.9 (5th Cir. 2007)) (citing *Cinel v. Connick,* 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

## III.    DISCUSSION

*A.  Whether Burlington and Evanston Owed Weyerhaeuser a Duty to Defend and Indemnify Under the Policies and Excess Policy[3]*

As an insurance policy is a contract, the policy must be analyzed using the general rules of contract interpretation set out in the Louisiana Civil Code.  *Bernard v. Ellis*, 111 So.3d 995, 1002 (La. 2012); *see also Mayo v. State Farm Mut. Auto. Ins. Co.*, 869 So.2d 96, 99 (La. 2004) (citing LA. CIV. CODE ART. 2045 (West 1987) (Under the Civil Code, "[t]he judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract."); *Ilgenfritz v. Canopius U.S. Ins.*, 243 So.3d 1109, 1112 (La. Ct. App. 2 Cir. 2017).  "If the wording is clear and ambiguous with regard to the parties' intent, the insurance policy must be enforced as written."  *Id.* at 1113.  That is, "[t]he rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clarity the parties' intent."  *Mayo*, 869 So.2d at 99-100.

It is well established that the duty to defend in Louisiana law is generally broader than an insurer's liability for damage claims.  *See Charley Am. Home Assur. Co. v. Czarniecki*, So.2d 253, 259 (1969).  The Louisiana Supreme Court addressed the duty to defend in *Czarniecki*, stating that an "insurer's duty to defend suits brought against its insured is determined by the allegations of the injured plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage."  *Id.* (citing *Benoit v. Fuselier*, 195 So.3d

---

[3] As this court sits in diversity, it is obligated to "apply the substantive law of the forum state." *Meador v. Apple, Inc.*, 911 F.3d 260, 264 (5th Cir. 2018). "To determine Louisiana law, we look to the final decisions of the Louisiana Supreme Court." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007). Absent such a decision, "we make an Erie guess, which requires us to employ Louisiana's civilian methodology, whereby we first examine primary sources of law: the constitution, codes, and statutes." *Apache Deepwater, L.L.C. v. W&T Offshore, Inc.*, 930 F.3d 647, 654 (5th Cir. 2019) (quotation marks omitted).

679 (La. App. 1967)). "[I]f, assuming all the allegations of the petition to be true, there would be both (1) coverage under the policy and (2) liability to the plaintiff, the insurer must defend the insured regardless of the outcome of the suit." *Id.*; *see also Hoffpauir v. Cajundome Comm'n*, 318 So.3d 334, 339 (La. Ct. App. 3 Cir. 2021) (stating same). This analysis, deemed the "eight-corners rule," requires that "the factual allegations of the petition are to be liberally interpreted in determining whether they set forth grounds which bring the claim within the scope of the insurer's duty to defend the suit brought against its insured." *Hoffpauir*, 318 So.3d at 339.

With regard to a duty to indemnify,

"As a general rule, one seeking indemnity for a settlement must show actual liability to recover." *Sullivan v. Franicevich*, 899 So. 2d 602, 609 (La. App. 4th Cir.), cert. denied, 902 So. 2d 1051 (La. 2005). "An exception to the rule is that the indemnitee need show only potential, rather than actual, liability . . . where the claim is based on a written contract . . ." *Vaughn v. Franklin*, 785 So. 2d 79, 87 (La. App. 1st Cir.), cert. denied, 798 So. 2d 969 (La. 2001). An indemnitee also need show only potential liability if "the defendant tenders the defense of the action to the indemnitor." *Fontenot v. Mesa Petrol. Co.*, 791 F.2d 1207, 1216–17 (5th Cir. 1986). Those propositions are supported by the overwhelming weight of Louisiana . . . and Fifth Circuit . . . authority.

*Chevron Oronite Co., L.L.C. v. Jacobs Field Servs. N. Am., Inc.*, 951 F.3d 219, 226 (5th Cir. 2020) (citations omitted). Of course, "[l]ogic dictates that if the policy unambiguously excludes coverage for purpose of an insurer's duty to defend, the insurer owes no duty to pay the sums its insured is legally obligated to pay." *Chalmbers, Collins & Alwell, Inc. v. Burnett & Co.*, 175 So.3d 1100, 1102 (La. App. 3d Cir. 2015).

    i.   *Whether Burlington and Evanston Owed Weyerhaeuser a Duty to Defend and Indemnify as an Additional Insured*
In this case, a review of the allegations of the Complaint and the attachments thereto make clear that the Policies, and by reference and incorporation, the Excess Policy, listed only NR as an additional insured. Likewise, Plaintiffs do not dispute that only Weyerhaeuser was

listed as a defendant in the three underlying lawsuits for which it contends that it was entitled to defense and indemnity.

Applying the applicable rules of contract interpretation under Louisiana law, it seems obvious that Plaintiffs fail to state a claim as a matter of law: Weyerhaeuser was not covered by the Policies and Excess Policy, and NR, which was covered as an additional insured, was not a party to the underlying lawsuits. However, Plaintiffs argue that there is indeed a duty to defend and indemnify in this case for three reasons:

(1) NR was the "correct name of the party in the underlying lawsuits" and was the "proper party" when it was "the entity contracting with Simsboro to perform the work and owned the facility at which the work was performed." [doc. #35, p. 3 (underscoring and initial capitalization omitted)];

(2) Coverage should be extended to Weyerhaeuser because of mutual mistake; and/or

(3) Burlington and Evanston waived the coverage defense by failing to raise the issue until this suit was filed.

(a) *Burlington's and Evanston's Knowledge that NR Was the Correct Party in the Underlying Lawsuits*

First, Plaintiffs contend that Weyerhaeuser was entitled to coverage for defense and indemnity because NR, an additional insured under the Policies and Excess Policy, was the real defendant based on the allegations in the petitions filed in the underlying lawsuits. They argue that there was "no dispute" that NR was the proper party to the underlying lawsuits and that Burlington "had sufficient knowledge of NR's potential involvement to trigger its defense and indemnity obligations" because "[t]he allegations in the underlying [petitions] . . . show that the plaintiffs were focused on the entity that contracted with Simsboro, and that entity was . . . NR." [doc. #35, pp. 3, 10].

11

However, to accept Plaintiffs' argument, the Court would have to consider extrinsic evidence and/or knowledge of the involved entities. The parties have not cited the Court to (nor has the Court found) a decision of the Louisiana Supreme Court or Louisiana appellate courts with the precise type of facts alleged in Plaintiffs' Complaint. The only support Weyerhaeuser and NR cite for their assertion that Burlington should have relied on outside information in determining coverage is an insurance treatise. [doc. #35, p. 10] (citing COUCH ON INSURANCE § 200:22, PLITT ET AL. (3d ed. 2020)). Although the treatise lists a number of courts that have followed this line of thinking, none are decisions of Louisiana courts. The fact that some states may subscribe to Weyerhaeuser and NR's suggested eight-corners analysis is of no moment. Instead, the undersigned finds that, generally, Louisiana federal and state district courts have rejected this argument. See *Kent & Smith Holdings, LLC v. HDI Global Ins. Co.*, 344 F.Supp.3d 878, 882 (M.D. La. 2018) (applying Louisiana law) ("Under Louisiana's 'Eight Corners Rule,' duty to defend must be analyzed by applying the allegations of the complaint without resort to extrinsic evidence."); *Bryant v. Motwani*, 683 So.2d 880, 884 (La. App. 4 Cir. 1996) ("The duty to defend is determined solely from the plaintiff's pleadings and the face of the policy, without consideration of extraneous evidence."); *Seilham v. Commonwealth Land Title Ins. Co.*, 360 F.Supp.3d 412, 423 (E.D. La. 2018) (applying Louisiana law) ("Thus, in evaluating an insurer's duty to defend, a court examines only the plaintiff's pleadings and the face of the policy, without consideration of extraneous evidence.") (internal quotes and citations omitted).

Further, while not directly on point, the court finds guidance from a Louisiana appellate court decision. In *Alombro v. Salman*, a named insured, Samir Salman, sought for coverage from his homeowners' insurer for bodily injuries which the plaintiff alleged that he caused. 536 So.2d 764, 765 (La. App. 5 Cir. 1988). The insurer denied coverage on the basis of an intentional acts

12

exclusion.  However, Louisiana Fifth Circuit found that the insurer could not avoid its duty to defend on the basis because the insurer gleaned the information from police reports outside of the allegations of the petition and the four corners of the policy.  *Id.* at 765, 766-67.  The Court explained that an "insurer's duty to defend is measured by the allegations of the petition[,] even though the insurer may have determined that there was no coverage on the basis of known or ascertainable fact."  *Id.* at 767 (citing *Benoit*, 195 So.3d at 683).

Applying the eight-corners rule to this case, the undersigned has reviewed the petitions of the underlying lawsuits and the Policies.  In *Boudreaux* I, there are no allegations against Simsboro at all, so there is nothing in the petition or the Policies/Excess Policy which would require Burlington and Evanston to defend or indemnify Weyerhaeuser as an additional insured in that lawsuit.[4]  Further, even in the other two lawsuits in which claims are asserted against both Simsboro and Weyerhaeuser, the eight corners of the petitions and the Policies when read together do not trigger Burlington's and Evanston's duties of defense and indemnity.  In order to find that the allegations in the petitions of the underlying lawsuits assert a claim against NR, rather than Weyerhaeuser, triggering a duty to defend, the court must examine extrinsic evidence (e.g., the Manufacturing Agreement) and/or consider the extrinsic knowledge of the involved entities. [5]  Acting in diversity and considering the guidance available, the undersigned finds that

---

[4] Given the analysis and conclusions set forth herein, the undersigned will not separately address Burlington's argument, adopted by Evanston, that there was no duty to defend and indemnify Weyerhaeuser as to *Boudreaux* I.

[5] Weyerhaeuser and NR also claim that Burlington was required to consider extrinsic knowledge because "the Supplementary Payments provision states that Burlington will defend an indemnitee when, among other things, "[t]he allegations in the 'suit' **and information we know about the occurrence**' are such that no conflict appears to exist."  [doc. #35, p. 11] (quoting [doc. #1-2, p. 23].  However, this provision relates only to parties claiming to be third-party beneficiaries; not parties claiming to be additional insureds.  The undersigned considers that separate argument below.

the eight-corners rule precludes consideration of the outside evidence and/or knowledge.  Thus, it is recommended that Plaintiffs have failed to state a claim as a matter of law on this basis.

Plaintiffs also argue that Weyerhaeuser pointed out in subsequent pleadings that NR, not Weyerhaeuser, was the proper party to the underlying lawsuits and that these pleadings should have been considered for the eight-corners analysis.  [doc. #35, p. 4].  Although courts have found that the eight-corners analysis may extend to pleadings other than the petition,  the undersigned is not persuaded that Burlington's knowledge that NR was purportedly the proper party to the underlying lawsuits created an obligation for Burlington to defend and indemnify Weyerhaeuser.  None of the cases cited by Plaintiffs stand for the proposition that pleadings outside the petition or complaint may suffice to extend a duty of defense and/or indemnification to an entity not named as a defendant or a third-party defendant in an underlying lawsuit.  *See, e.g., Grimaldi Mechanical, L.L.C. v. The Gray Ins. Co.*, 933 So.2d 887, 892 (La. App. 4th Cir. 2006) (extending the eight-corners rule to "all pleadings," but using those pleadings to find coverage on behalf of the named insured); *State Farm Fire and Cas. Co. v. Target Corp.*, 939 F.Supp.2d 593 (M.D. La. 2011) (finding that Target was entitled to a defense from the insurer for the manufacturer of Christmas lights sold at its stores).[6]

---

[6] In the Louisiana Supreme Court case cited by Plaintiffs, *Suire v. Lafayette City-Parish Consol. Gov't*, 907 So.2d 37 (La. 2005), the Court considered whether a general contractor and its insurer owed a duty to indemnify and defend the Lafayette City–Parish Consolidated Government ("the City") and/or the City's engineering firm against the plaintiff's claims pursuant to either (a) a contractual indemnity clause in the contract between the City and the general contractor, or (b) the additional insured provision in the insurance contract between the contractor and its insurer. In considering the additional insured provision, the Louisiana Supreme Court reiterated that it is "the well-pleaded allegations of the plaintiff's petition" that must be examined to determine whether the plaintiff's allegations "'unambiguously exclude[ ]' coverage." *Id.*  The Court did indeed state that "where the pleadings disclose 'even a possibility of liability' under the contract, the duty is triggered." *Id.*  However, the Court then reviews the precise language of "[t]he additional insured provision in the contract between" the general contractor and its insurer to

Furthermore, even if Burlington had notice from Weyerhaeuser's pleadings its contention that NR was the proper defendant in the underlying lawsuits, none of the cases support the extension of coverage to Weyerhaeuser, the only named defendant to the lawsuits. Rather, such a duty would extend only to NR, which was not named in the pleadings and which is not alleged to have participated in or funded the settlement.

### (b) Mutual Mistake

Plaintiffs contend, next, that, Weyerhaeuser has stated a claim for breach of contract against Burlington and Evanston because the failure to include it as an additional insured on the Policies and Excess Policy was a result of mutual mistake. The undersigned rejects this argument as well.[7]

"Reformation is an equitable remedy which is available to correct mistakes or errors in written instruments only when the instruments as written do not reflect the true intent of the parties." *Tech Realty & Inv. Co., Inc. v. Morrow*, 673 So.2d 1145, 1147 (La. App. 3 Cir. 1996). In an action for reformation, the moving party must establish mutual mistake by clear and convincing evidence. *Id.*

---

determine whether coverage should be afforded to the City and/or its engineer. Thus, it was the **insurance contract** that the Court relied upon, and the specific language of that policy.

[7]Burlington and Evanston contend that Weyerhaeuser has raised its mutual mistake and waiver (*see discussion infra)* arguments for the first time in response to the pending motions. When a plaintiff raises an argument for the first time in response to a dispositive motion, the court may consider those claims and arguments as a motion to amend under Federal Rule of Civil Procedure 15(a). District courts "should freely give leave [to amend] when justice so requires," FED. R. CIV. P. 15(a)(2), but they have discretion to grant or deny that leave "and may consider a variety of factors including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., and futility of the amendment." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n,* 751 F.3d 368, 378 (5th Cir. 2014). In this case, for the reasons set forth in the body of this Report and Recommendation, amendment would be futile.

Weyerhaeuser and NR claim that, if Weyerhaeuser was not an additional insured or a third-party beneficiary, then coverage should nonetheless be extended to Weyerhaeuser due to mutual mistake of the parties.  [doc. #35, p. 15].  According to Weyerhaeuser and NR, "[i]t is clear that the intent of the parties was to provide coverage to all Weyerhaeuser entities."  *Id.* Burlington argues that Weyerhaeuser and NR's reformation action must be rejected because, *inter alia*, "the cause of action was not raised in [Weyerhaeuser and NR's] Complaint, nor did Weyerhaeuser and NR allege 'mutual mistake' on the part of [Defendant] anywhere in its Complaint."  [doc. #36, p. 5, n.15].

Here, Weyerhaeuser and NR have failed to meet their heavy burden to warrant reformation.  The only grounds Weyerhaeuser and NR use to indicate mutual mistake is the Manufacturing Agreement which states that "Weyerhaeuser Company and its Subsidiaries' will be endorsed as Additional Insured . . ." [doc. #35-1].  According to Weyerhaeuser and NR, this shows clear intent of the parties to provide coverage to Weyerhaeuser, as well as NR.  [doc. #35, p. 15].  However, this clause does not show that the parties to the insurance contract – Burlington and Simsboro – (and likewise, Evanston and Simsboro) intended to include Weyerhaeuser as an additional insured.  At most, it shows that Simsboro and Weyerhaeuser intended this.  However, reformation based on the mutual mistake of Simsboro and Weyerhaeuser is not enough.  Rather, to warrant reformation of the Policy, Weyerhaeuser and NR must show that Burlington and Simsboro made a mutual mistake by failing to include Weyerhaeuser as an additional insured.

Further, as a reformation arises in equity, this conclusion is consistent with a prior decision in the Western District of Louisiana that when a party is erroneously left off an insurance policy as an additional insured and there is no evidence that it was the fault of the insurer, it would be unjust to add the forgotten party to the policy after the fact.  *Certain*

*Underwriters at Lloyd's, London v. First Petroleum, Inc.*, 13-cv-2226, 2014 WL 4929316, at *5

(W.D. La. Oct. 1, 2014).  In *Certain Underwriters at Lloyd's, London v. First Petroleum, Inc.*,[8]

Judge Minaldi examined whether an insurance company owed a duty to defend First Petroleum,

a company that was not listed as an insured or additional insured, but claimed that it should have

been included.  *Id.*  Ultimately, the Court found that the insurer was not obligated to defend First

Petroleum, explaining that

> While the court is sympathetic to First Petroleum's position, the plaintiff entered into a
> contract of insurance to provide coverage to a discrete and limited group of entities and
> individuals, and it would be unjust at this stage to insert an additional party into that
> contract of insurance when there is no evidence that that party's exclusion was the fault
> of the [insurer].

*Id.*

Like the *First Petroleum* Court, this Court is sympathetic to Weyerhaeuser's situation;

however, it would be unfair to insert a separate entity into the insurance contract after the

underlying suits have already been settled, and there is no evidence that it was Burlington's fault

that Weyerhaeuser was not named as an additional insured.  Accordingly, it is recommended that

Plaintiffs have failed to state a claim as a matter of law on this basis.

(c)  *Waiver of Defense*

Finally, Plaintiffs argue that Burlington (and, thus, Evanston) are precluded from

asserting a coverage defense because the issue was not raised until this lawsuit was filed.  [doc.

#35, p. 15].  The insurers claim that Weyerhaeuser and NR's waiver argument lacks merit

---

[8] Although the Court used Texas law to determine the outcome of *First Petroleum*, that does not
affect its applicability to this case.  In *First Petroleum*, the Court, in analyzing choice of law,
concluded that the outcome of the case would be the same whether they used Texas or Louisiana
law, because "'the general rules of contract and interpretation according to the laws of Louisiana
and Texas are similar and would lead to the same result.'"  2014 WL 4929316, at *3 (citing
*Burlington Res., Inc. v. United Nat'l Ins. Co.*, 481 F.Supp.2d 567, 570-71 (E.D. La. 2007).

because waiver does not apply when Burlington never provided Weyerhaeuser a defense in the underlying lawsuits.  [doc. #36, p. 2].  The undersigned agrees.

"The Louisiana Supreme Court has held that waiver may expand coverage beyond the terms of an insurance policy."  *Moreno v. Energy Corp.*, 233 So.3d 176, 184 (La. App. 3d Cir. 2017).  "Waiver is generally understood to be the intentional relinquishment of a known right, power or privilege or conduct, so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished."  *Cugini, Ltd. v. Argonaut Great Cent. Ins. Co.*, 889 So.2d 1104, 1114 (La. App. 2004).  For waiver to apply, however, the insurance company must ultimately provide a defense to the purported insured.  *Moreno,* 233 So.3d at 184 ("[W]hen an insurer with knowledge of facts indicating non-coverage under the insurance policy, **assumes or continues the insured's defense** without obtaining a non-waiver agreement to reserve its coverage defense, the insurer waives such policy defense.") (emphasis added) (internal citations omitted).  On the other hand, "[b]reach of duty to defend," unlike waiver, "has nothing to do with waiver of rights in the insurance context."  *Arceneaux v. Amstar Corp.*, 66 So.2d 438, 451 (La. 2011).  When breaching its duty to defend, an insurer "is not misleading an insured into believing there could be coverage under the policy.  The insurer is not manifesting an intent to relinquish its right to deny coverage under the policy."  *Id.*  Rather, the insurance company is "expressly denying coverage under the policy.  In such a case, waiver principles simply do not apply."  *Id.*

Here, Weyerhaeuser and NR appear to confuse waiver with breach of an insurer's duty to defend.  Weyerhaeuser and NR do not allege that the insurers furnished Weyerhaeuser a defense despite not owing such a defense; rather, they argue that Burlington erroneously denied coverage to Weyerhaeuser.  *See* [doc. #1, p. 10] ("Burlington had a duty to indemnify Weyerhaeuser for

the settlement of the underlying lawsuits.  Burlington breached its duty to defend by failing to defend Weyerhaeuser in the underlying lawsuits.").  Accordingly, Weyerhaeuser and NR make a claim for breach of the duty to defend, not a claim for waiver of coverage defenses.  It is recommended that Weyerhaeuser and NR have failed to state a claim as a matter of law on this basis.

Accordingly, the undersigned finds that Weyerhaeuser was not an additional insured under the Policy, it was not entitled to de-facto additional insured status, nor is it entitled to coverage on the basis of Burlington's waiver.  Therefore, it is recommended that Plaintiffs have failed to state a claim as a matter of law that Burlington breached its contractual duties, under the additional insured provisions of the Policies, by failing to defend and indemnify Weyerhaeuser in the underlying lawsuits.  Moreover, because the Policies did not provide coverage on this basis, it is further recommended that Plaintiffs have failed to state a claim as a matter of law that Evanston breached its contractual duties by failing to provide coverage under the Excess Policy.

   ii.  *Whether Burlington and Evanston Owed Weyerhaeuser a Duty to Defend and Indemnify as a Third-Party Beneficiary*
        Weyerhaeuser brings breach of contract claims against Burlington "premised not only on [its] additional insured status under the . . . policies, but also related to Burlington's failure to assume Simsboro's contractual obligations to defend and indemnify Weyerhaeuser." [doc. #35, p. 18 (citing [doc. #1, at ¶¶ 48-53])].[9]  Weyerhaeuser and NR explain that "[t]he bases

---

[9]Paragraphs 48-53 of the Complaint allege as follows:

48.   The Manufacturing Agreement also qualifies as an "insured contract" under the Burlington policies and the excess policies.

49.   The lawsuits triggered Simsboro's duty to defend and indemnify Weyerhaeuser and thereby, pursuant to the contractual liability coverage in the Burlington policies, triggered Burlington's duty to defend and indemnify Weyerhaeuser.

50.   Burlington had a duty to defend Weyerhaeuser that arose at the time of Simsboro's

for this [third-party beneficiary] claim are (1) the defense and indemnify provision in the manufacturing agreement between [NR] and Simsboro and (2) the insured contract provision in the Burlington policies under which Burlington agreed to provide coverage for any agreement by Simsboro to assume the tort liability of another party."[10] *Id.* (citing [doc. #1, ¶¶ 10, 16]). Essentially, Plaintiffs claim that the defense and indemnity provision in the Manufacturing Agreement obligating Simsboro to "'indemnify, defend, and hold harmless [NR] . . . and its parent company [Weyerhaeuser]'" triggered the Policies' insured contract provisions "under which Burlington agreed to provide coverage for any agreement by Simsboro to assume the tort liability of another party." [doc. #35, p. 12 (quoting [doc. #1, ¶ 10])]. Thus, even if Weyerhaeuser is not an additional named insured, Plaintiffs contend that Weyerhaeuser was entitled to a defense and indemnification and that Burlington had a duty, not only to defend and indemnify Simsboro, but also to defend and indemnify Weyerhaeuser.

In its reply, Burlington addresses Plaintiffs' arguments in two ways. First, Burlington argues that Weyerhaeuser cannot assert a breach of contract claim as a third party beneficiary of the Policies because it is not an additional insured in the Policies. "[T]he Complaint does not

---

notice and continued until the settlement of the underlying lawsuits.

51. Burlington had a duty to indemnify Weyerhaeuser for the settlement of the underlying lawsuits.

52. Burlington breached its duty to defend by failing to defend Weyerhaeuser in the underlying lawsuits.

53. Burlington breached its duty to indemnify by failing to indemnify Weyerhaeuser for the settlement of the underlying lawsuits.

[doc. #1, ¶¶ 48-53].

[10] Burlington initially moved for dismissal on the basis that Plaintiffs could not prevail on claims under the Direct Action Statute. In their opposition, Weyerhaeuser and NR clarify that they do not attempt to state claims under that statute.

allege any facts demonstrating that [Burlington] intended for Weyerhaeuser to benefit from the Policies, and the Policies exclude additional insured benefits to a non-insured for an 'insured contract' falling outside its definition." [doc. #36, p. 5]. Second, Burlington also counters that, even if the Manufacturing Agreement constitutes an insured contract, the insured contract provision under the Policies is "conferred onto the indemnitee (Simsboro), not the indemnitor (Weyerhaeuser and NR)." [doc. #36, p. 7].

In Louisiana, a plaintiff may sue under an insurance policy when he is a third party beneficiary of the contract. *See Haddad v. Elkhateeb*, 46 So.3d 244, 257 n. 11 (La. App. 4 Cir. 2010) writ denied, 49 So.3d 895 (La. 2010); *see also Rogers v. Integrated Expl. & Prod., LLC*, 265 So. 3d 880, 896 (La. App. 4 Cir. 2019), writ denied, 271 So. 3d 198 (La. 2019) ("If a party is neither a named insured nor an additional insured, he can nonetheless avail himself of the benefits of the policy if he can establish that he is a third party beneficiary.") (internal citations omitted). Louisiana Civil Code article 1978 provides that "[a] contracting party may stipulate a benefit for a third person called a third party beneficiary." LA. CIV. CODE art. 1978. Pursuant to Louisiana Civil Code article 1981, "[t]he stipulation gives the third party beneficiary the right to demand performance from the promisor." *Joseph v. Hosp. Serv. Dist. No. 2 of the Parish of St. Mary*, 939 So.2d 1206, 1211 (La. 2006). This stipulation, known as a "stipulation pour autrui," can never be "presumed"; therefore, the "party claiming the benefit bears the burden of proof." *Id.* at 1212. The Louisiana Supreme Court has set forth three criteria for determining whether contracting parties have provided a benefit for a third party requiring a review of whether (1) the stipulation for a third party is manifestly clear; (2) there is certainty as to the benefit provided the third party; and (3) the benefit is not a mere incident of the contract between the promisor and the promisee. *Id.* at 1212-13. In general, a contractual indemnitee may bring a breach of

21

contract claim against an insurer as a third-party beneficiary, but such claims are limited to the terms of the applicable insurance policies and indemnification agreements. *See, Rogers, supra*; M*abile v. Dow Chem. Co.*, 2016-CA-0577, 2016 WL 7436587 (La. App. 1 Cir. 2016) (reversing grant of exception of no right of action and finding allegations in petition sufficiently pled third party beneficiary status relative to contract of insurance); *Cashman Equip. Corp. v. Rozel Operating Co.,* 854 F.Supp.2d 406, 414 (M.D. La. 12) (denying motion to dismiss claims for defense and indemnity based on status as a contractual indemnitee whether under Louisiana or Texas law).

First, the fact that Weyerhaeuser was not a named additional insured under the Policies is not dispositive of this breach of contract claim. For the reasons previously stated, it is recommended that Weyerhaeuser's asserted breach of contract claims as an additional insured be dismissed. However, Weyerhaeuser may yet survive dismissal if it alleges facts to demonstrate that the Policies manifested a "clear intention to benefit" Weyerhaeuser.[11]  *Joseph*, 939 So.2d at 1212. In that regard, Weyerhaeuser has alleged that the Manufacturing Agreement qualifies as an "insured contract" under the Policies and the Excess Policy, that the underlying lawsuits triggered Simsboro's duty to defend and indemnify Weyerhaeuser, and that Burlington was also required to defend and indemnify Weyerhaeuser, "pursuant to the contractual liability coverage in the [Policies]." [doc. #1, ¶¶ 48-49]. Therefore, the undersigned must consider the plain language of the Policies when compared to the indemnification provision of the Manufacturing Agreement.

---

[11] The parties' argument go to the first of the three considerations under *Joseph* as Burlington is not (at least in this motion) contesting the certainty of the benefit (defense and indemnification) or alleging that said benefit was merely incidental to the insurance contract.

In the Exclusions section of the Policies, Burlington is clear that this "insurance does not apply to "'[b]odily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement."  [doc. #1-2, p. 17,¶ (2)(b); doc. #1-3, p. 18, ¶ (2)(b)].  However, in the same section, Burlington clarifies what is **not excluded** (ie., an exclusion from the exclusion).  "This exclusion does not apply to liability for damages . . .  for "[b]odily injury" or "property damage" that Simsboro "assumed in a contract or agreement that is an 'insured contract.'"  [doc. #1-2, p. 17,¶ (2)(b)(2); doc. #1-3, p. 18, ¶ (2)(b)(2)].  Under the contractual liability amendment, the Policies further define an "insured contract," in pertinent part, as:

> That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization, provided the 'bodily injury' or 'property damage' is caused, in whole or in part, by you or by those acting on your behalf.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

[doc. #1-2, p. 45, ¶9(f); doc. #1-3, p. 43, ¶ 9(f) (Endorsement BG-G-064 09 08)].  The definition of insured contract in subsection (f) "does not include that part of any contract or agreement . . . (4) That indemnifies any person or organization for 'bodily injury' [or] 'property damage' . . . arising out of an 'occurrence' caused by the sole negligence of said person or organization."  *Id.* at ¶ 9(f)(4) (both Policies).

The Manufacturing Agreement[12] (the alleged "insured contract") states that "[Simsboro] will indemnify, defend, and hold harmless [NR],[13] and its parent company . . . against all claims,

---

[12] The Court may properly consider the entirety of the Manufacturing Agreement because it is referenced in the Complaint and central to Plaintiffs' claims.

[13] Confusingly, the Manufacturing Agreement refers to NR throughout as "Weyerhaeuser." However, it is clear and undisputed that the agreement was between NR and Simsboro. Therefore, all references in the Manufacturing Agreement to "Weyerhaeuser" are actually to NR,

damages . . . arising out of (a) [Simsboro's] . . . negligence, other tortious fault, or intentional misconduct . . . . provided, that no right to indemnify will exist in that portion of a Claim resulting from the negligence, tortious fault, or intentional misconduct of [NR], its officers, employees, contractors, and agents." [doc. #35-1, p. 4, ¶ 15]. Thus, under the Manufacturing Agreement, Simsboro agreed to defend and indemnify both NR and Weyerhaeuser for Simsboro's own negligence or tortious fault, but not to defend or indemnify NR or Weyerhaeuser for **NR's** own negligence or tortious fault. The Manufacturing Agreement does not speak to the conduct, tortious or otherwise, of Weyerhaeuser, the parent company, at all.

Relying on the language from the Manufacturing Agreement and the Policies, Weyerhaeuser concludes that the Manufacturing Agreement "qualf[ies] as an insured contract" and when "the defense and indemnification provisions in the manufacturing agreement" are considered "with Burlington's coverage of insured contracts," it has sufficiently stated a breach of contract claim as a third-party beneficiary. Burlington responds, however, that the facts alleged in the Complaint are not sufficient to demonstrate its intention to provide a benefit to Weyerhaeuser and that the Policies exclude additional insured benefits to an entity falling outside the "insured contract" definition. Burlington argues that the Manufacturing Agreement is not an insured contract because it provided defense and indemnity to Weyerhaeuser (and NR) "only for claims arising out of Simsboro's own fault." [doc. #36, p. 6].

Reviewing the language of the Policies and the Manufacturing Agreement, as well as the allegations of the Complaint, the undersigned finds that Weyerhaeuser has not sufficiently alleged that there was a clear intention to benefit Weyerhaeuser such that it was owed a defense

---

and the only references to Weyerhaeuser are not by name, but by the designation "parent company."

and indemnification for the underlying lawsuits. It appears to the undersigned that NR, not Weyerhaeuser, might have had a third-party beneficiary claim against Burlington based on the contractual liability provisions of the Policies when read in conjunction with the Manufacturing Agreement. Although this lawsuit and the claims therein were brought by Weyerhaeuser and NR, it is clear that the third-party beneficiary claim is brought on behalf of Weyerhaeuser, not NR. NR contracted with Simsboro, and NR and Simsboro agreed that Simsboro would defend and indemnify NR and Weyerhaeuser for the tortious conduct of Simsboro arising from the Manufacturing Agreement. However, there was no agreement between Simsboro and Weyerhaeuser for defense and indemnity made against Weyerhaeuser directly, as were made in this case. Regardless of what Weyerhaeuser claims to have been "known" by Simsboro and Burlington, the burden remains on Weyerhaeuser to allege facts that manifest the clear intent of Burlington and Simsboro to provide a benefit to Weyerhaeuser.

Further, even if Weyerhaeuser has alleged or could amend to allege facts sufficient to show that it was a third party beneficiary of the Policies, Louisiana courts have found that when an insurance policy binds an insurance company to pay sums that an insured becomes obligated to pay pursuant to a third-party contract, the insurance policy merely requires the insurance company to defend and indemnify the insured, not the indemnitee. For example, in *Ordonez v. W.T. Grant Co.*, the Court analyzed an insurance policy which required the insurer to "pay on behalf of the insured all sums which the insured, by reasons of contractual liability assumed by him under a contract . . . shall become legally obligated to pay as damages because of . . . bodily injury . . ." 297 So.2d 780, 783 (La. App. 4 Cir. 1974) (internal quotations omitted). Ultimately, the Court found that the provision extended coverage only to the insured. The party to be

indemnified "has no claim thereunder.   and the insurer has no obligation to defend suits against the insured's indemnitee."  *Id.*

Here, the insured contract leads to the same result as that in *Ordonez*.  The Policies contain a provision requiring Burlington to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage.'"  [doc. #1-3, p. 17].  This provision, like the provision in *Ordonez*, anticipates payment on behalf of the indemnitor – in this case, Simsboro.  Accordingly, the indemnitees – Weyerhaeuser and NR – have no grounds for reimbursement from Burlington under this provision.

Therefore, the insured contract did not confer coverage onto Weyerhaeuser, but rather, Simsboro.  Accordingly, Plaintiffs have failed to state a claim that Burlington breached the insurance contract by failing to defend and indemnify Weyerhaeuser as a third-party beneficiary.  Moreover, because the Policy did not apply, the Excess Policy was not triggered.  It is therefore recommended that Plaintiffs have failed to state a claim on this basis as well.[14]

B.  *Weyerhaeuser's and NR's Claim for Violation La. R.S. § 22:1892*

Weyerhaeuser and NR argue that Burlington and Evanston have violated its duties under La. R.S. § 22:1892.  [doc. #25-1].  Burlington and Evanston counter that, because they did not owe Weyerhaeuser a duty to defend or indemnify, these claims must be dismissed.

---

[14] Burlington also moved for dismissal, and Evanston adopted its motion, on the basis that the claims in the underlying lawsuits were barred by the application of the Total Pollution Exclusion.  [docs. #25-1, p. 22; #35, p. 20].  Evanston raised two of its own arguments, asserting that Weyerhaeuser failed to adequately plead potential exhaustion of the Burlington primary insurance policies and that Evanston did not have the opportunity to participate in the settlement discussions and, thus, its consent to settle provision bars coverage.  [doc. #29, pp. 7-10].  However, based on the undersigned's recommendations, it is not necessary to reach these remaining arguments.

Louisiana Revised Statue § 22:1892 requires insurers to "pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest." LA. R.S. § 22:1892(a). Section 22:1892 exists to ensure the prompt payment of insurance claims. As such, it naturally follows that this statute is only applicable when coverage applies. *See Wagner v. Tammany Holdings Co., LLC*, 135 So.3d 77, 87 (La. Ap. 4 Cir. 2013) (finding that because the insurer had neither a duty to defend nor a duty to indemnify, LA. R.S. § 22:1892 could not apply); *see also Magidson v. Lansing*, No. 2012-CA-0634, 2012 WL 6677912 (La. App. Dec. 21, 2012) ("It is illogical to contend that [the insured] is liable to plaintiff for bad faith penalties and attorneys [under LA. R.S. § 22:1892] when there is no coverage under its . . . policy.").

Here, Weyerhaeuser and NR's cause of action under LA. R.S. § 22:1892 must fail. Neither Burlington nor Evanston owed coverage to Weyerhaeuser, and, therefore, Weyerhaeuser and NR cannot claim that the insurers violated Louisiana's prompt payment statute. It is recommended that Weyerhaeuser and NR have failed to state a claim as a matter of law against Burlington and Evanston for violation of LA. R.S. § 22:1892.

## C. *Plaintiffs' Bad Faith Claims*

Louisiana Revised Statutes §§ 22:1892 and 22:1973 " provide penalties to insured and Policy beneficiaries if an insurer acts in bad faith with respect to a claim made under an insurance policy. Both statutes require the plaintiff to have a "valid underlying claim" under the insurance contract." *Cashman*, 854 F. Supp. 2d at 414 (quoting *Phillips v. Patterson Ins. Co.,* 2001-1545 (La. Ct. App. 3d Cir. 4/3/02); 813 So.2d 1191, 1195).

Having found that Plaintiffs failed to state a claim as a matter of law against Burlington

and Evanston for breach of contract or violation of Louisiana's Prompt Payment statute, it is axiomatic that Plaintiffs' bad faith claims fail as well. *See Dousay v. Allstate Ins. Co.,* 99-32 (La. App. 3d Cir. 6/2/99); 741 So.2d 750-, 754-55; *Nguyen v. St. Paul Travelers Ins. Co.*, No. 06-4130, 2007 WL 3275133, at \*7 (E.D. La. Nov. 5, 2007).  Accordingly, it is recommended that Plaintiffs' bad faith claims also be dismissed with prejudice.

## IV.    RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that Burlington's motion to dismiss [doc. #25] be **GRANTED,** and Weyerhaeuser and NR's claims against Burlington be **DISMISSED WITH PREJUDICE**.  **IT IS FURTHER RECOMMENDED** that Evanston's motion to dismiss [doc. #29] be **GRANTED,** and Weyerhaeuser and NR's claims against Evanston be **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objection within fourteen (14) days after being served with a copy thereof.  A courtesy copy of any objection or response for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR,**

**FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL**

**FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE in Chambers on this 1st day of March, 2022.

_____
KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE